# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                            Case No. 18-CR-137

**MARCO MACIAS**
        **Defendant.**

---

## DECISION AND ORDER

The government charged defendant Marco Macias with possession of a firearm as an unlawful user of a controlled substance, contrary to 18 U.S.C. § 922(g)(3). Defendant moved to suppress evidence – marijuana, drug paraphernalia, ammunition, and other personal property – recovered from a vehicle parked outside his residence.[1] The magistrate judge handling pre-trial proceedings in this case held an evidentiary hearing, then issued a recommendation that the motion be denied. Defendant objects. My review is de novo. Fed. R. Crim. P. 59(b).

## I. FACTS

Neither side objects to the magistrate judge's statement of the facts. I accordingly adopt that statement (R. 33 at 2-8) and present an abbreviated version of events herein.

On May 4, 2018, Milwaukee police officers responded to a shots fired call at a residence, encountering defendant on the porch arguing with a relative. Defendant had something in his hand; concerned that it might be a gun, the officers ordered him to the ground and handcuffed

---

[1] The police apparently recovered the firearm forming the basis for the charge from a bedroom inside the residence.

him. While lying on his stomach, defendant said to one of the officers, who had drawn his firearm, "kill me, motherfucker." (Tr. at 22.)

Defendant asked Officer Sarosh to take him to a squad car because he was being photographed by persons outside the residence. Prior to placing him in the squad, Sarosh checked defendant for weapons, finding keys and a wallet, which he returned to defendant's pockets. Officer Davis asked defendant where the gun was, and defendant responded that it was in the pink bedroom. Sarosh then placed defendant in the back of the squad, while Sarosh sat in the front passenger seat.

Davis learned from defendant's uncle that defendant may have more firearms inside his vehicle, which the uncle identified as a Toyota Camry parked outside the residence. Davis walked over to the car, cupped his hands, and peered inside the front driver's side window, observing suspected marijuana in the center console area. Davis tried the door handle, but it was locked. He then went to the squad where defendant was located and asked Sarosh if defendant had keys; Sarosh responded that he did.

Davis then spoke to defendant, asking if he had anything in his car. Defendant denied having anything in his car, but if he did it was legal. Davis asked: "Do – do you mind if I [inaudible] your car?" Defendant answered: "Uh, there ain't nothing in my car; and if I do, it's legal." (Tr. at 42-43.) Davis indicated: "We're not going to sweat you for anything small. You're not in trouble." (Tr. at 43.) Defendant stated that he had been depressed and "thinking real weird," and Davis responded "hopefully we can get – get you some help. All right. But I just want you to be – as long as you're honest with me." (Tr. at 43.) Defendant indicated that he had been having problems with his mother, that he had been "fidgety as fuck," and that he accidentally "triggered" the gun. (Tr. at 44.)

2

Davis asked if defendant was a felon, and defendant responded he was not and that he tried to stay out of trouble, but that he had to get away from his mother. Davis said: "Okay. Like I said, I'm not going to sweat you for anything small. I just want to – ", to which defendant responded: "Yeah, go ahead man. Do your thing. You might find some fucking ammo or whatever. That's it, though." (Tr. at 45.) Davis then went back to the car with the keys, unlocked the doors, and searched it.

## II. DISCUSSION

Defendant argues that the police violated the Fourth Amendment by trespassing on his car and by searching the car without a valid consent. The government argues that defendant lacks standing to make these claims. However, the government does not specifically contest the magistrate judge's findings on standing (R. 33 at 8-9), which I will accept for purposes of deciding the motions.

**A.     Trespass**

Defendant contends that Davis trespassed on the vehicle when he cupped his hands, making contact with the window while peering inside, and then, after observing suspected marijuana, attempted to open the door. Defendant cites no authority suggesting that this constituted a Fourth Amendment search. See United States v. Head, 783 F.2d 1422, 1427 (9th Cir. 1986) (holding that agent did not violate Fourth Amendment by leaning closer to vehicle window, cupping his hands around his eyes to exclude glare, and looking into it, not touching the window "except to rest his hands as he shaded his eyes"); see also United States v. Johnson, 496 Fed. Appx. 668, 670 (7th Cir. 2012) (holding that a citizen has a limited expectation of privacy in his car and thus officers are entitled to look through the car windows,

3

even with a flashlight); United States v. Ware, 914 F.2d 997, 1000 (7th Cir. 1990) ("[T]here is no expectation of privacy and thus no 'search' when a person merely observes something through an automobile's window.").[2]

Defendant relies on United States v. Jones, 565 U.S. 400 (2012) and New York v. Class, 475 U.S. 106 (1986), but those cases are inapposite. In Jones, the police "physically occupied private property for the purpose of obtaining information" by installing a GPS tracking device on the undercarriage of the suspect's vehicle, which they used to track his movements for 28 days. Id. at 403-04. In other words, the officers in that case did more than merely touch the vehicle while conducting a visual inspection; they attached a device, which remained there and allowed the police to gather information about the suspect's affairs. See id. at 410. Davis did nothing of the sort here.

In Class, the police, after making a traffic stop, opened the door to check the Vehicle Identification Number ("VIN"). When the officer did not find the VIN on the doorjamb, he reached into the interior of the car to move some papers obscuring the area of the dashboard where the VIN is located in later model automobiles. In doing so, the officer saw the handle of a gun protruding about one inch from underneath the driver's seat. The officer seized the gun and arrested the driver. 475 U.S. at 108. While the Court acknowledged that a car's interior is subject to Fourth Amendment protection from unreasonable intrusions by the police, id. at 114-15, it found the officer's actions reasonable in that case, id. at 115-16. In this case,

---

[2]Defendant attempts to distinguish Ware, upon which the magistrate judge relied, because in this case Davis touched the car while peering through the window. However, Davis testified that he could see into the vehicle without cupping his hands and touching the window. (Tr. at 87.) Accordingly, even if these actions heightened the degree of intrusion, they did not permit the discovery of evidence that could not have been discovered otherwise. See United States v. Howard, 729 F.3d 655, 661 (7th Cir. 2013).

4

Davis did not intrude into the interior of the car prior to obtaining consent.[3]

**B.     Consent**

Defendant further contends that he did not voluntarily consent to the search of the car. Determining whether consent was voluntary depends on the totality of the circumstances, including the characteristics of the person who gave consent, whether he was advised of his constitutional rights, whether (and how long) he was detained before consenting, whether he consented immediately or only after repeated requests, and whether physical coercion was used. E.g., United States v. Correa, 908 F.3d 208, 222 (7th Cir. 2018).

As Officer Davis noted, defendant had been through a "stressful situation." (Tr. at 78.) A gun had been discharged inside his house, the police had been called, and he had been taken into custody. At the beginning of his encounter with the police, defendant appeared agitated, telling the officer holding him at gun point, "kill me, motherfucker." However, while he remained upset about the argument he had with his mother and apologetic about his apparently accidental discharge of the gun, by the time Davis spoke to him about searching the car he had calmed. Both Sarosh and Davis testified that defendant appeared to understand their questions and gave coherent answers. (Tr. at 56, 73.) Similarly, while Davis admitted that defendant seemed young and immature (Tr. at 91), and perhaps in need of mental health services (Tr. at 93), defendant gave no indication that he was unable to communicate due to

---

[3] In any event, the police recovered no evidence based on Davis's alleged trespass. Rather, the evidence was obtained later pursuant to the consent search. Davis testified that he did not tell anyone what he initially observed peering through the window (Tr. at 89), and defendant makes no claim that Davis used what he saw to procure consent. Cf. United States v. Meece, 580 F.3d 616, 619 (7th Cir. 2009); United States v. Liss, 103 F.3d 617, 620-21 (7th Cir. 1997).

5

mental illness (Tr. at 107).[4] Davis confirmed, on questioning by the magistrate judge, that defendant displayed no confusion about the conversation they were having. "He was very clear with his answers that he had for the questions that I gave him." (Tr. at 108.) The objective circumstances would not have led a reasonable officer to believe that a voluntary consent could not be given. See United States v. Grap, 403 F.3d 439, 445 (7th Cir. 2005).

Defendant notes that a total of 10 officers responded to the scene, and he was initially held at gun point. However, just two officers (Davis and Sarosh) interacted with defendant in the squad when the consent was obtained, and neither officer drew his weapon at that time or otherwise engaged in any threatening behavior; nor did the officers repeatedly badger him for consent; and defendant had been detained for a short period of time before providing consent.[5]

Defendant further notes that the officers did not advise him of his constitutional rights or tell him he could refuse consent. While these are relevant factors, failure to inform a suspect in custody of his rights does not invalidate an otherwise voluntary consent. See Grap, 403 F.3d at 443; United States v. Bernitt, 392 F.3d 873, 877 (7th Cir. 2004); United States v. Baker, 78 F.3d 1241, 1245 (7th Cir. 1996).

Finally, defendant argues that Davis procured the consent by falsely telling him he wasn't in trouble and that the police weren't going to "sweat" him for anything "small." "Although 'the law permits the police to pressure and cajole, conceal material facts, and actively mislead,' it draws the line at outright fraud, as where police extract a confession in exchange for a false

---

[4]Sarosh testified that defendant did not appear to be in need of services. (Tr. at 69.)

[5]It appears that defendant had been in custody for about ten minutes, and that his discussion with Davis leading to the consent lasted about two minutes. (See Tr. at 60; Govt. Ex. 2 & 24.)

6

promise to set the defendant free." Hadley v. Williams, 368 F.3d 747, 749 (7th Cir. 2004) (quoting United States v. Rutledge, 900 F.2d 1127, 1131 (7th Cir. 1990)).  As the magistrate judge noted, viewed in context, Davis's comments are properly seen as an attempt to build rapport and obtain defendant's cooperation in locating any additional firearms, rather than as an improper promise.  As part of their conversation, Davis assured defendant that no one had been hurt due to the accidental discharge of the gun (Tr. at 44), and he confirmed that defendant was not a felon (Tr. at 45).  Suggesting that defendant would not be "sweated" for anything "small" – without any indication of what that meant – cannot be characterized as a promise that would distort defendant's decision whether to consent.

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 33) is adopted, and defendant's motions to suppress (R. 14, 27) are denied.

Dated at Milwaukee, Wisconsin, this 17th day of December, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge

7